IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02762-WJM-NRN

MARILYN HICKS,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

**ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY OF DEFENDANT'S INSURANCE RESERVES AND SETTLEMENT AUTHORITY (Dkt. #45)**

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on a discovery dispute. Plaintiff Marilyn Hicks seeks production of information from Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") claim file which had been redacted, including information regarding reserves and settlement authority. The Court initially heard argument on the question in connection with other discovery issues on September 12, 2023. (*See* Dkt. #43.) At that time, the Court requested additional briefing on the issue of discoverability of reserves. Consistent with this Court order, on September 18, 2023, Plaintiff filed a formal motion to compel discovery of Defendant's insurance reserves and settlement authority. (*See* Dkt. #45.) On September 26, 2023, Defendant filed its response. (*See* Dkt. #46.)

**Background**

This case arises from a June 9, 2019 auto collision in which Ms. Hicks sustained neck and shoulder injuries. The tortfeasor's liability carrier, Progressive, paid its insured's policy limits of $30,055. Ms. Hicks then pursued her $250,000 of available UIM benefits under her policy with State Farm. Throughout the claim, Ms. Hicks allegedly sent State Farm updated medical records and bills, with a final total of nearly $60,000. It is alleged that despite this information, State Farm offered only a "nuisance value" of $1500 to settle Ms. Hicks' UIM claim. Notwithstanding the submission of even more medical records, the supposed "nuisance value" offer did not change.

**The Dispute**

In discovery, State Farm has redacted from the claim notes all references to reserves and settlement authority. Plaintiff moves the Court to compel production of the reserves and settlement authority information because the state of mind of the insurance carrier is in controversy, given that Plaintiff has brought claims of common law and statutory bad faith. Plaintiff, relying on the Colorado Supreme Court's decision in *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 656 (Colo. 2012), argues that reserves information (and settlement authority) could shed light on whether the insurance company adjusted a claim in good faith; or promptly investigated, assessed, or offered to settle the claim.

Citing its own prior precedent, *Silva v. Basin Western, Inc.*, 47 P.3d 1184 (Colo. 2002), the *Sunahara* decision explained the regulatory importance of insurers' practice of setting aside reserves and also explained that, as a general matter, the amount that

2

an insurance company sets aside as a reserve is not relevant to the insurer's ultimate obligation to pay a claim:

> Upon receiving notice of a claim from an insured, an insurance company will establish reserves and settlement authority soon after opening the claim file. "Reserves" are the "funds insurance companies set aside to cover future expenses, losses, claims, or liabilities" associated with a particular case. [*Silva*, 47 P.3d] at 1189 (citing *Black's Law Dictionary* 1307 (6th ed. 1990)). Colorado law requires insurance companies to maintain reserves to assure the insurer's ability to satisfy its potential obligations under its policies. *See, e.g.*, § 10–3–201(1)(a)(V), C.R.S. (2011) (requiring insurance companies to maintain a minimum capital or guaranty fund and an accumulated surplus). Reserves are not an admission or valuation by the insurer; rather, they fulfill the insurance company's statutory obligations and reflect the insured's estimated potential liability on a particular claim. *Silva*, 47 P.3d at 1189.
>
> The term "settlement authority" generally refers to an insurance agent's "ability to accept an offer of settlement that binds the principal up to and including a certain amount of money." *Id*. Like reserves, settlement authority does not constitute a "final, objective assessment of a claims [sic] worth to which an insurer may be held." *Id*. at 1190. Instead, both reserves and settlement authority reflect the insurer's "basic assessment of the value of a claim taking into consideration the likelihood of an adverse judgment, but do not normally entail a thorough factual and legal evaluation when routinely made as a claim analysis." *Id*. at 1191.
>
> Taking the nature of reserves and settlement authority into account in *Silva*, we held that neither are reasonably calculated to lead to admissible evidence—and thus are not generally subject to discovery—because: (1) they do not accurately reflect the insurer's valuation of a particular claim; (2) they are not admissions of liability; and (3) insurance companies prepare them simply to satisfy statutory obligations and to establish bargaining tactics. *See id*. at 1188–91. Thus, as the court of appeals held in this case, reserves and settlement authority figures "are irrelevant to a jury's determination of liability and damages and are not reasonably calculated to lead to the discovery of admissible evidence." *Sunahara*, No. 09CA0599, slip op. at 18.

*Sunahara*, 280 P.3d at 656. The *Sunahara* court also found that "[l]ike reserves and settlement authority figures themselves, liability assessments and similar cursory fault evaluations used by an insurance company to develop reserves and settlement

3

authority are not reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 657. Ultimately, the Colorado Supreme Court affirmed the trial court's decision not to allow discovery of reserves and settlement authority information, or the underlying communications reflecting the setting of reserves or establishing the settlement authority. *Id*. at 658.

The *Sunahara* court did however qualify its decision, stating that there could be circumstances where reserves information could potentially be relevant, especially where bad faith is alleged:

> In bad faith and declaratory judgment actions, evidence of reserves and settlement authority could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim. [*Silva*, 47 P.3d at 1193]. UIM actions differ from bad faith and declaratory judgment cases because, rather than defending its *own* actions, an insurance company in a UIM action must essentially defend the tortfeasor's behavior. As such, evidence of the liability assessments and fault evaluations underlying reserves and settlement authority is not reasonably calculated to lead to the discovery of admissible evidence in UIM actions, just as it is not reasonably calculated to lead to admissible evidence in a third-party action like *Silva*.

*Sunahara*, 280 P.3d at 657–58.

Plaintiff asserts that in the instant UIM bad faith case, discovery of reserves and settlement authority information is not merely academic. Plaintiff argues that throughout the claim adjustment process, State Farm insisted it was "open to new information." Plaintiff insists that the reserve amounts and settlement authority (and any adjustments in those amounts—or lack thereof) will show whether State Farm was, in fact, acting in good faith by considering and incorporating into its evaluation of the claim the new information being provided.

4

Defendant State Farm, for its part, says that while there is some Colorado law (including from this District) supporting the relevance and therefore discoverability of reserves and settlement authority, it does not follow that reserves and settlement authority are *always* discoverable in a first party insurance bad faith case, such as this one. (*See* Dkt. #47 at 2–3.) State Farm relies on a recent Colorado Court of Appeals decision, *Fear v. GEICO Cas. Co.*, 532 P.3d 382 (2023), which reversed a trial court's judgment in favor of an insured in an uninsured motorist bad faith case. The *Fear* court found that the trial court had erroneously relied on GEICO's internal evaluation of the UIM claim as an admission of the undisputed amount owed on the claim. *Fear*, 532 P.3d at 386. This was an error, in part, because GEICO's internal evaluation of its own potential liability (although not technically a settlement offer) was "inextricably intertwined" with the settlement offer it later made. *Id.* Said the *Fear* court, allowing the admission into evidence of this internal evaluation violated the "the spirit" of Federal Rule of Evidence 408, which supports the exclusion of certain work product, internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other side. *Id*.

In dicta, the *Fear* court also rejected *Sunahara*'s suggestion that reserves and settlement authority could potentially be relevant in a bad faith case:

> Nor are we persuaded otherwise by *Sunahara's* observation, in dicta, that "[i]n bad faith and declaratory judgment actions, evidence of reserves and settlement authority could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim." *Sunahara*, ¶ 29. If, as we have already concluded, an insurer's internal evaluation of noneconomic damages yields no actionable information about the amount of undisputed benefits owed, then it follows that *the same information has no relevance to the question whether the insurer unreasonably delayed making UIM payments under the insured's policy*.

*Fear*, 532 P.3d at 387 (emphasis added).

This reasoning is reflected in a decision by Judge Babcock, in a case where discovery of reserves information in an insurance dispute had been allowed, but ultimately was not admitted into evidence at trial despite its potential relevance:

> Admitting evidence of an insurer's loss reserves could lead the jury to assume that amount was an internal valuation of the claim and/or an assessment of its liability for settlement purposes. [*Silva*,] 47 P.3d at 1189 (noting the "common misconception" that an insurer's loss reserves are the same as settlement authority when, in actuality, "[t]he main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's potential liability").

*Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-CV-00982-LTB-KLM, 2018 WL 3496735, at *8 (D. Colo. July 20, 2018) (internal citation omitted). The court explained that "because a loss reserve does not reflect an admission by the insurance company that a claim is worth a particular amount of money, they have limited usefulness as valuations of a claim at trial, and instead contain a high possibility of unfair prejudice against an insurer." *Id.* (internal citations omitted).

In addition, per State Farm, allowing discovery of redacted reserves and settlement evaluation information would unfairly give Plaintiff insight into how State Farm assesses its own exposure in this case, which is not something that State Farm has access to from the Plaintiff. State Farm claims this is a "thinly veiled attempt by plaintiff to get material to use as a lever for settlement." (Dkt. #47 at 5.) State Farm also argues that post-litigation reserve/settlement authority information is doubly irrelevant, as it includes additional factors such as litigation expenses and attorney-client opinions and work product. Such post-litigation reserve and settlement information is not only irrelevant to any disputed issue in the case, it is also protected from disclosure under

6

the attorney-client and work product privileges. *See Raines v. Westfield Ins. Co.*, No. 3:21-CV-00637, 2023 WL 199680, at *5 (S.D.W. Va. Jan. 17, 2023) (reserve information that is prepared after suit is filed is "prepared regarding the pending litigation" and as such is protected work product).

**Analysis and Decision**

Today, the Court is issuing a decision on a question of *discoverability* of potential evidence, not on *admissibility* of that evidence at trial. The touchstone for discoverability is the potential relevance of the evidence. *See* Fed. R. Civ. P. 26(b)(1) (explaining that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). Critically, under the Rule, information in this scope of discovery "need not be admissible in evidence to be discoverable." *Id*.

It seems to be the consensus in this District that, in an insurance bad faith case, evidence of pre-litigation reserves and settlement authority is potentially relevant to the insurer's good faith (or bad faith) conduct, and therefore is discoverable. *See Anderson v. Mt. States Mut. Cas. Co.*, No. 15-cv-01316-RM-NYW, 2016 U.S. Dist. LEXIS 56733, at *6–7 (D. Colo. Apr. 28, 2016) (holding that, in light of bad faith allegations, the plaintiff "should be permitted to discover information, currently withheld, that reflects the [d]efendant's reserves and settlement authority relevant and proportional to [p]laintiff's asserted bad faith claim"); *Colo. Mills, LLC v. Phila. Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *8 (D. Colo. Apr. 2, 2013) (in bad faith case, finding that reserve information may be relevant for the purposes set forth in *Sunahara* and *Silva* and concluding the reserve information dated prior to a specific date "is relevant

7

and discoverable"); *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 WL 2477150, at *4 (D. Colo. June 10, 2013) (granting plaintiff's motion to compel discovery of insurance reserves information); *Seabron v. Am. Fam. Mut. Ins. Co.*, 862 F.Supp.2d 1149, 1158 (D. Colo 2012) (ordering that previously redacted information about reserves and settlement authority should be produced, because "in a bad faith case, the evidence of reserves and settlement authority is directed at whether or not the insurer's actions toward its insureds were reasonable").

Whether information about reserves or settlement authority is ultimately admissible is an entirely different question. *See*, *e.g.*, *Peden*, 2018 WL 3496735, at *8 (finding that evidence of insurer's loss reserve would provide some relevancy, but excluding that evidence from at trial "as the danger of unfair prejudice outweighs its potential relevancy to the issue of its reasonableness"). Even the Colorado Court of Appeals decision in *Fear* was decided based on the inappropriate admission of what that court deemed to be inadmissible evidence used for an inappropriate purpose. It has not yet been determined what the reserves and settlement authority evidence in this case may show, or the purpose for which Plaintiff may seek to introduce it at trial.

The Court here is not deciding admissibility at trial. That will be for another time (and judge). On the issue of discoverability, to the extent that Plaintiff seeks production of (pre-suit) pages or entries from the claim file that were redacted based on references to reserves or settlement authority, those entries or pages shall be produced by Defendant State Farm in an unredacted form.

To be clear, this order applies only to pre-suit setting of reserves or establishing settlement authority. The Court accepts State Farm's argument that once suit is filed,

the calculus changes, and reserves or settlement authority may incorporate extraneous considerations, such as attorneys' fees, making the information much less relevant to the pre-suit good faith (or bad faith) of the insurer. Therefore, State Farm need not produce unredacted claim notes from after the lawsuit was filed (in state court) on September 19, 2022.

### Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Discovery of Defendant's Insurance Reserves and Settlement Authority (Dkt. #45) is **Granted In Part** and **Denied In Part**. It is denied to the extent the motion seeks production of unredacted claim notes showing reserves and settlement authority information from after the date of the filing of the initial complaint on September 19, 2022. It is otherwise granted.

**SO ORDERED.**

Dated at Denver, Colorado this 11th day of October, 2023

*/s/ N. Reid Neureiter*
_____
N. Reid Neureiter
United States Magistrate Judge