**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 22-cv-2762-WJM-NRN

MARILYN HICKS,

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

        Before the Court is Defendant State Farm Mutual Automobile Insurance

Company's ("State Farm") Motion for Partial Summary Judgment on Plaintiff Marilyn

Hicks's statutory and common law bad faith claims ("Motion").  (ECF No. 53.)  Hicks

filed a response (ECF No. 54), to which State Farm filed a reply (ECF No. 55).  For the

following reasons, the Motion is granted.

## I. STANDARD OF REVIEW

        Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the

relevant substantive law, it is essential to proper disposition of the claim.  *Wright v.*

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if

the evidence is such that it might lead a reasonable trier of fact to return a verdict for the

nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS

In June 2019, Hicks was rear-ended while stopped at a red light. (ECF No. 54 at 1.) In September 2020, she received the available liability limits from the tortfeasor's insurance provider in the amount of $30,055. (*Id.*) Hicks filed an underinsured motorized ("UIM") claim with State Farm, asserting that she had incurred $59,918 in medical bills. (*Id.*) State Farm reviewed Hicks's medical records and hired an expert, Dr. Philip Stull, who opined that she "likely sustained a neck and low back strain following the accident in question" but maintained that "[a]ny other diagnoses are chronic and unrelated to the accident." (ECF No. 53 at 17.) Hicks hired her own expert,[1] Dr. Barry Ogin, who opined that she sustained whiplash from the accident and that the treatment she received "for her neck and shoulder was reasonable, medically necessary, and directly related to the collision." (ECF No. 54 at 32.) After reviewing these medical records and expert reports, among other documents, State Farm offered to settle Hicks's UIM claim for $1,500. (ECF No. 53 at 2.) But Hicks filed suit, alleging

---

[1] Hicks also mentions hiring another expert, Dr. Gronseth, but she primarily relies on the opinions of Dr. Ogin in her response. (*See generally* ECF No. 54.)

claims for UIM, breach of contract, statutory bad faith, and common law bad faith.  (ECF
No. 6 at 6–10.)

### III. PERTINENT PRINCIPLES

Colorado law provides for two types of bad faith claims arising out of a breach of
an insurance contract: (1) common law bad faith and (2) statutory bad faith. *Dowgiallo v.
Allstate Ins. Co.*, 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020).  The two claims are
similar but nevertheless distinct.  "[B]oth common law and statutory bad faith claims
require a showing of unreasonable conduct."  *McKinney v. State Farm Mut. Auto. Ins.
Co.*, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021).  A statutory bad faith claim
primarily concerns whether an insurer denied or delayed the payment of insurance
benefits without a reasonable basis.  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d
501, 506 (Colo. 2018).  To succeed on a claim of unreasonable delay or denial, an
insured must establish that (1) the insurer delayed or denied payment of benefits to the
insured, and (2) the delay or denial was without a reasonable basis.  *Am. Family Mut.
Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

Along with an insurer's statutory duties, an insurer has a simultaneous common
law duty to deal in good faith with its insured.  *Am. Family Mut. Ins. Co. v. Allen*, 102
P.3d 333, 342 (Colo. 2004).  "Due to the 'special nature of the insurance contract and
the relationship which exists between the insurer and the insured,' an insurer's breach
of the duty of good faith and fair dealing gives rise to a separate cause of action arising
in tort."  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting
*Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).  "The
requirements of a common law bad faith claim under Colorado law are heightened in

comparison to those of a statutory bad faith claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020).  In addition to demonstrating that the insurer delayed or denied the payment of benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id*. (quoting *Fisher v. State Farm Mut. Auto. Ins. Co*., 419 P.3d 985, 990 (Colo. App. 2015)).

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am. Family Ins. Grp*., 275 P.3d 750, 759 (Colo. App. 2012); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  But "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id*.  "The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. GEICO Cas. Co*., 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wis*., 89 P.3d 409, 415 (Colo. 2004)); *Bankr. Estate of Morris v. COPIC Ins. Co*., 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.").

## IV. ANALYSIS

State Farm moves for summary judgment on Hicks's statutory and common law bad faith claims, arguing that "the fact that the parties do not agree as to the value of Ms. Hicks's claim cannot support her" unreasonable delay/denial theories.[2]  (*See* ECF

---

[2] State Farm posits that, despite calculating Hicks's total damages as being approximately $20,000—*i.e.*, approximately $10,000 less than the amount she received from

No. 53 at 9.)  Because State Farm has shown that there are no facts upon which a reasonable jury could find its conduct to be unreasonable—let alone knowingly or recklessly unreasonable—the Court grants the Motion.

Hicks contends that State Farm acted unreasonably in denying her claim because it

- "had information in its claim file from treating doctors indicating [she] had suffered from a neck and shoulder injury which caused permanent impairment";

- "never requested [Hicks] to undergo [its] own full Independent Medical Examination despite Dr. Ogin's report directly contradicting Dr. Stull's record review";

- ignored its internal registered nurse "who opined that typical treatment for [Hicks's] injuries could be long-lasting or conservative"; and

- failed to "follow its own internal company policies as to when the company should seek an independent medical exam."

(ECF No. 54 at 4, 7, 10.)  Based on this, she argues, a reasonable jury could find "that the claims handling in this case was arbitrary and that the claims handling was basically a sham purported 'investigation' that resulted in an unreasonable denial of UIM benefits to [her]."  (*Id.* at 7.)

Distilled down, however, this purported evidence amounts to nothing more than a disagreement as to whether State Farm reasonably denied her UIM claim.  *See Yale*

---

the tortfeasor's insurance provider—it nonetheless offered to settle her UIM claim for $1,500. (ECF No. 53 at 3.)

*Condos. Homeowner's Ass'n, Inc. v. Am. Fam. Mut. Ins. Co., S.I.*, 2021 WL 1222518, at *7 (D. Colo. Apr. 1, 2021) ("Unreasonable conduct cannot be established by virtue of a mere disagreement of value between the insured and insurer."). Although Hicks emphasizes that she takes issue with *how* State Farm handled her UIM claim (*see* ECF No. 54 at 11), in reality, she focuses on the weight State Farm attributed to the opinions of her retained experts and the figures on her medical bills.

For instance, Hicks argues that State Farm denied her UIM claim despite Dr. Ogin's favorable opinions of her claim, which necessarily means that it must not have "in fact consider[ed] the totality of the claim file." (*Id.* at 10.) Similarly, she argues that State Farm acted unreasonably by failing to consider the medical opinions of its in-house registered nurse. (*Id.*) In other words, Hicks challenges the decision State Farm reached and infers therefrom that it must not have actually considered the totality of the evidence in the claims file. (*See id.* ("Based on the evidence cited above, a reasonable jury certainly could conclude that [State Farm's handler's] claims ring 'hollow' due to the fact that State Farm had conflicting doctor opinions in the claims file, gave no value in the evaluation for the permanency of [her] injuries, and ignored the opinions of State Farm's in-house nurse who cautioned that typical treatment for an older person could be more length than otherwise expected.").)

But, in the Court's view, this argument is just that—attorney argument. It is not evidence from which a reasonable jury could find statutory bad faith handling of a claim. *See Wallace v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 6962091, at *5 (D. Colo. Oct. 20, 2023) (wherein the undersigned concluded that plaintiff failed to show evidence of unreasonableness where she merely argued "that State Farm should have valued her

claim higher than zero based on voluminous bills"); *The Green Earth Wellness Center v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016) ("[W]ere the Court to hold that a mere disagreement between parties as to the valuation of a claim created a triable bad faith claim, essentially every insurance dispute would proceed to trial on such a claim, as disputes between the insurer and insured over the proper valuation of the loss are routine.").

Notably, Hicks points to no authority providing that such attorney argument alone can establish unreasonable conduct by an insurer. Aside from this argument, Hicks does not point to any evidence demonstrating that State Farm neglected to properly consider her claim. She does not, for example, point to facts showing that State Farm completely ignored the opinions of Dr. Ogin or any other document in the claim file. On the contrary, she explicitly acknowledges that State Farm considered such information in reaching its decision. (ECF No. 54 at 9 ("There is no dispute that Ms. Springer considered [various medical records] in her claims evaluation.").) To the Court's mind, Hicks is more dissatisfied with State Farm's denial of her UIM claim than the process by which it reached that decision.

Nor is the Court persuaded by Hicks's argument that a jury could find that State Farm unreasonably handled the claim by failing to ask her to undergo an Independent Medical Examination by its own physician (and violating its own policies by failing to do so). (*Id.* at 11 ("Here, there is no dispute that State Farm did not seek clarification from any of Plaintiff's treating providers before seeking the record review from its hired expert, Dr. Stull.").) For one, State Farm points out that "Dr. Stull did perform an [Independent Medical Examination] (although that was done after additional information

was provided by plaintiff during the course of litigation)." (ECF No. 55 at 2.) In any event, the Court is unaware of any caselaw—and Hicks cites none—indicating that the absence of such an examination suggests bad faith by an insurer. *See Wallace*, 2023 WL 6962091, at *5.

Hence, the Court finds that the undisputed facts show that State Farm is entitled to summary judgment on Hicks's statutory bad faith claim.

The Court's conclusion is the same with respect to Hick's common law bad faith claim. Hicks likewise fails to demonstrate that State Farm knew or recklessly disregarded the validity of her claim. To reiterate, she merely disagrees with the evaluation, which is insufficient to create a triable bad faith claim. *The Green Earth Wellness Center*, 163 F. Supp. 3d at 836.

Accordingly, the Court grants summary judgment in State Farm's favor on Hicks's statutory and common law bad faith claims.

## V.   FINAL THOUGHTS

In her response, Hicks asserts that her medical bills are approximately $60,000. (ECF No. 54 at 1.) And it is undisputed that she received approximately $30,000 from the liability insurer. (*Id.*)

Given the nominal amount of damages at issue in the case, the Court has every expectation that the parties will successfully resolve this matter before trial. Proceeding to a five-day jury trial in federal court to resolve this minimal (in terms of the amount in controversy) dispute would be a colossal misuse of the Court's limited resources, not to mention the significant time and expense such an undertaking would require of the parties.

**VI. CONCLUSION**

Accordingly, the Court ORDERS as follows:

1. State Farm's Motion for Partial Summary Judgment on Hicks's statutory and common law bad faith claims is GRANTED;

2. State Farm will be entitled to judgment in its favor against Hicks on Claim 3 (statutory bad faith) and Claim 4 (common law bad faith) at such time as the Clerk enters final judgment on all claims of all parties in this action; and

3. This case remains SET for a Final Trial Preparation Conference on January 29, 2025, and a five-day jury trial to begin on February 10, 2025 (ECF No. 61).

Dated this 24th day of September, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge